**Case No. 25-13636**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

MICHAEL D. ARRINGTON
PLAINTIFF- APPELLANT

V.

MIAMI-DADE COUNTY PUBLIC SCHOOL, et al
DEFENDANTS- APPELLEES

---

ON APPEAL FROM THE UNITED DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No.1:15-24114-CV-MARTINEZ-GOODMAN
(Hon. Jose E. Martinez)

---

# AMENDED PETITION FOR PANEL REHEARING BY MICHAEL D. ARRINGTON

---

Pro se Michael D. Arrington
204 Pride Way
Bedford, Massachusetts 01730
michaelarrington31@yahoo.com
(781) 652-1479

# EXHIBIT A

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

MICHAEL D. ARRINGTON
PLAINTIFF-APPELLANT

APPEAL No. 25- 13636

V.

MIAMI-DADE COUNTY PUBLIC SCHOOL, et al
DEFEDANTS-APPELLES

## CERTIFICATE OF INTERESTED PERSONS

Appellant, Michael D. Arrington, acting pro se respectfully files this Certificate of Interested Persons and Corporate Disclosure Statement (CIP) pursuant to 11th Circuit Rule 26.1-1, related to disclosure by that parties of interested persons. The interested parties are as follows:

1. Arrington Michael D. (Plaintiff)
2. Bendross- Mindingall, Dr. Dorothy
3. Carvalho Albert M. (Defendant)
4. Dotres, Dr. Jose L.

5. Fraga, Christi

6. Flores, Alberto

7. Gallagan, Sean

8. Gallon, Dr. Steve, III

9. Garcia, Luis Michael

10. Geller, Lucia Baez

11. George T. Baker Aviation School

12. Goodman, Honorable Johnathan, United States Magistrate Judge

13. Hantman, Perla Tabares

14. Harvey, Walter J.

15. Johnson Pamela, (Defendant)

16. Lawson, Mary C.

17. Martinez, Honorable Jose E., United States Judge

18. McEvoy, Claudia

19. Miami-Dade County Public Schools (Defendant)

20. Morales, Robert

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

21. Navarro, Dr. Lubby

22. Perez, Dr. Mata

23. Rojas, Maria Teresa

24. Sands, George W.

25. Santos, Luisa

26. Sigillo, Ida

27. Smith, Charles

28. The School Board of Miami-Dade County, Florida (Defendant)

/s/ Michael D. Arrington
Appellant Pro se

Michael D. Arrington
204 Pride Way
Bedford, Massachusetts 01730
michaelarrington31@yahoo.com
(781) 652-1479

## AMENDED PETITION FOR PANEL REHEARING

Pursuant to Federal Rule of Appellate Procedure Rule 40 and 11th Cir R. Local Rule 40-3, *Michael D. Arrington*, acting pro se files this petition for panel rehearing (hereinafter will be refer to as "*Arrington*"). As explained below, the panel's opinion overlooks issues of law and fact.

The panel overlooked the law that the Eleventh Circuit and District Court could fashion Rule 60(b) to restart the time to appeal and overlooked the fact *Arrington V* brief raises an error of misapprehension by the panel in *Arrington I.*

## ARGUMENT

In affirming the district court's denial of *Arrington's* motion to reopen the time to appeal, the panel's opinion states " but even assuming *Arrington* could show excusable neglect based on these circumstances, neither the district court nor we can fashion an equitable exception to the jurisdictional time requirements, whether under Rule 60(b) or the unique-circumstance doctrine citing *Bowles*, 551 U.S. at 213-14; *Vencor Hosps.,* 279 F.3d at 1308; 28 U.S.C.§ 2107 (c)(1); Fed. R. App. P. 4(a)(6)(A). Op. 6. Respectfully, *Arrington* suggests the panel overlooked an issue of law as to this point.

Contrary to the panel's opinion the Eleventh Circuit and the District Court have the authority to recharacterize pro se or mislabeled motions to reopen to match the appropriate legal vehicle for relief sought, such as *Arrington's* Rule 60(b)(1) motion to reopen as a motion to vacate and re- enter judgment by the district court on November 1,2023, based upon lack of jurisdiction, procedural due process violation and excusable neglect resetting the appeal clock. [ECF No. 120]. The Eleventh Circuit issued the no action notices which it lacked jurisdiction to issue since no notice of appeal was filed. Then, the Eleventh Circuit committed a procedural due process violation when it ruled on the motion for reconsideration without giving *Arrington* proper notice. *Arrington* relied on the Eleventh Circuit's no action notices dated July 21, and August 2, 2023, that no action will be taken on his motion for reconsiderations [ECF Nos.118,119] because it is superior to the federal district courts that was very harmful to him. The Eleventh Circuit has authority to remand the case back to the district court to vacate and re-enter judgment or correct it, on a petition for panel rehearing to prevent manifest injustice. Broadly, Rule 60(b) allows a district court to vacate and reenter

judgment to restore the right to appeal in "limited circumstance." *Brown v. Arias* Case No. 23-cv-0778-BAS-DDL citing *Washington v. Ryan*, 833 F.3d 1087, 1091(9th Cir. 2016). Rule 60(b)(1) specifically permits it in cases of " mistake, inadvertence, surprise, or excusable neglect." The district court is empowered to exercise this discretion to even "trigger a new filing deadline." The Ninth Circuit had previously held in *Mackey v. Hoffman* 682 F.3d 1247 (9th Cir. 2012), that *Bowles* did not bar a district court from granting relief pursuant to Rule 60(b)(1) from the time limits in Rules 4(a)(1) and 4(a)(5); Given that defendant does not qualify for relief under Federal Rule of Appellate Procedure 4(a)(5) or (6), we must determine if relief under Federal Rule of Civil Procedure 60(b) is appropriate. *U.S. v. Brown*, 179 F.R.D. 323 (1998). Fed R. Civ. P. 60(b), requesting the district court to vacate and re-enter its original judgment. *Lewis's* attorney argued that he was unaware that the notice of appeal was untimely, and that relief under Rule 60(b) would be an appropriate procedure to afford *Lewis* the right to appeal. *Lewis v. Alexander*, 987 F.2d 392 (1993).

As to the panel opinion's *Arrington's* remaining arguments simply rehash issues that have already been fully and finally resolved. Op. 6. Again, respectfully

*Arrington* proposes the panel overlooked an issue of fact as to this point.

A pleading is not considered to be" rehashing" (or re-arguing) issues when it specifically identifies material facts already in the record that *Arrington I* decision overlooked or patently misunderstood when making its decision.

Contrary to the panel's opinion *Arrington V* brief introduces relevant and crucial facts from the record overlooked, misapprehended or ignored in *Arrington I* decision that affected the outcome and shows *Arrington I* findings of fact and conclusions of law are clearly erroneous. The law-of-the case doctrine bars re-litigation of issues that were decided either explicitly or necessary implication in a prior. *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1288 (11th Cir. 2000). Nevertheless, we may reconsider an issue if, among things, the prior decision was clearly erroneous and would result in a manifest injustice.

Opposing the panel's opinion based upon *Arrington I* decision that states in relevant parts:

- Nor has Arrington shown that any of the named defendants would be liable even if he could establish a constitutional violation. Op.7.

**The panel overlooked Miami-Dade County School Board is a government entity liable for constitutional rights violations under 42 U.S.C. 1983, only when a specific, officially adopted policy or widespread custom is the moving force behind the violation. [ECF No.75; p.4,30-31.] State action and acting under color of law are generally considered coterminous.**

The third amended complaint alleges Miami-Dade County School Board has individually and in concert violated *Michael D. Arrington's* constitution rights **Alberto Carvalho,** superintendent for Miami-Dade County Public School District high ranking official inferred acting under color of law with the authority to take corrective measure and has established an official policy by his inaction of his subordinate's unconstitutional acts. [ECF No. 75; pp.4-5,23-24,28-29.] *Arrington* contacted the School District on or about April 5, 2012 and May 16, 2012, about how Mc Evoy GTB's financial aid officer provided him with a different service, aid or benefit or provide service in manner different than other non-African American students. [ECF No. 75; pp.7,17-18.] **Sean Gallagan,** principal of George T. Baker Aviation Technical College inferred acting under color of law with corrective action authority established an official policy by failure to correct, stop or prevent the race discrimination under Title VI Disparate Treatment and Equal

Protection Clause. [ECF No.75; pp.5-6, 14-23.] **Pamela Johnson,** supervisor for Miami-Dade County Public School District (e.g. George T. Baker Aviation Technical College) inferred acting under color of law with corrective action authority established an official policy because she had actual knowledge of her subordinate's violation of *Arrington's* constitution rights and failed to take action and acquiesced in those violations. [ECF No. 75; pp.6-7, 19-22,25-26,29-30.]

**The panel overlooked Miami-Dade County School District is a governmental agency liable for constitutional rights violation under 42 U.S.C. 1983, only when a specific officially adopted policy or widespread custom is the moving force is behind the violation [ECF No. 75; p.4,31-32.] State action and acting under color of law are generally considered coterminous.**

The third amended complaint alleges **Alberto Carvalho**, superintendent for Miami-Dade County Public School District high ranking official inferred acting under color of law with the authority to take corrective measure established an official policy by his inaction of his subordinate's unconstitutional acts. [ECF No. 75; pp.4-5,23-24,28-29.] *Arrington* contacted the School District on or about April 5, 2012 and May 16, 2012, about how *Mc Evoy* GTB's financial aid officer provided him with a different service, aid or benefit or provide service in a manner

different than other non-African American students [ECF No.75; pp.7,17-18.]

**Sean Gallagan**, principal of George T. Baker Aviation Technical College inferred acting under color of law with corrective action authority established an official policy by his failure to correct, stop or prevent the race discrimination under Title VI Disparate Treatment and Equal Protection Clause. [ECF No. 75; pp.5-6,14-23.]

**Pamela Johnson,** supervisor for Miami-Dade County Public School District (e.g. George T. Baker Aviation Technical College inferred acting under color of law with corrective action authority established an official policy because she had knowledge of her subordinate's violations of *Arrington's* constitution rights and failed to take action and acquiesced in those violations. [ECF No. 75; pp.6-7,19-22,25-26,29-30.]

**The panel overlooked that George T. Baker Aviation Technical College is a division of Miami-Dade County Public School District is liable for constitutional rights violation under 42 under U.S.C. 1983, only when a specific officially adopted policy or widespread custom is the moving force" behind the violation.**

The third amended complaint alleges **Sean Gallagan,** principal of George T. Baker Aviation Technical College inferred acting under color of law with corrective action authority established an official policy by his failure to correct,

stop or prevent the race discrimination under Title VI Disparate Treatment and Equal Protection Clause. [ECF No.75; pp. 5-6,14-23.]

**The panel overlooked Miami-Dade County Public Schools employees can be held personally liable for violating an individual's constitutional rights under 42 U.S.C. 1983. <u>State action and acting under color of law are generally considered coterminous</u>.**

<u>The third amended complaint alleges</u> **Claudia McEvoy,** inferred acting under color of law is the financial aid officer for George T. Baker Aviation Technical College is liable under 42 U.S.C. 1983. [ECF No. 75; pp. 7-8,10-12,15-19,20.] **Ida Sigillo**, inferred acting under color is the student's counselor for George T. Baker Aviation Technical College is liable under 42 U.S.C. 1983. [ECF No. 75; p.8,13.] **Alberto Flores**, inferred acting under color of law is an avionic instructor for George T. Baker Aviation Technical College is liable under 42 U.S.C. 1983. [ECF No.75; pp.9-10,12-13.] **Charles Smith**, inferred acting under color of law is an avionic instructor for George T. Baker Aviation Technical College is liable under 42 U.S.C. 1983. [ECF No. 75; pp. 9-11.]

- Arrington repeatedly asserts in conclusory terms that he was subject to race discrimination and that a "racial discriminatory education environment… existed in GTB." But these assertions are insufficient because" conclusory

allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." For instance, we need not accept as true Arrington's conclusory assertions that GTB placed him in the wrong course to oust him because of his race or that there was a "racially hostile environment" at GTB. Op.7.

**The panel misapprehended the factual allegations alleged in Arrington's third amended complaint.**

Assuming the panel's findings were correct that the third amended complaint alleges GTB placed him in the wrong course to oust him because of his race or that there was a " racially hostile environment" at GTB are supported by the factual allegations alleged in the third amended complaint:

1. **GTB placed him in the wrong course to oust him because of his race.**

   - GTB financial aid officer told Plaintiff he had to have 240-260 class hours before she could disburse the funds even though he only, need 150 class hours.

   - GTB's principal refused to correct Plaintiff's Pell Awards.

   - Plaintiff was given a different course textbook than other students after they completed the same course he had completed.

2. **There was a "racially hostile environment" at GTB.**

- his keys were stolen from his backpack during a class break.
- Other students " deliberately distracted" him whenever he was trying to take a test and " shadowed" him when he went to the bathroom and principal refused to take action.

- But beyond conclusory allegations, Arrington fails to plausibly show that any of the various instances of mistreatment he alleged in the complaint were connected to his race. At best, Arrington suggested that he was treated differently than non-African-American students on two occasions: (1) other non-African-American students used a different textbook than he did when they took the same course "around the same time" as he did; (2) other non-African-American students received their Pell Grant refund checks before he did. Op.8.

<u>**The panel overlooked the third amended complaint alleges other factual allegations of mistreatment connected to Arrington's race.**</u>

Sharing records with non-educator is discriminatory because *Arrington* was being targeted due to his protected status. [ECF No. 75; p. 6.]

<u>The School Board, School District individual agents and GTB failure to forward transcript in accordance to School Board's policy. [ECF 75; p.23.]</u>

<u>Other students "deliberately distracted" him whenever he was trying to take a test and "shadowed" him when he went to the bathroom, and principal refused to take action. [ECF No. 75; p.20.]</u>

Mc Evoy withheld information regarding VRAP which was additional benefits for Plaintiff since he is a veteran. [ECF No. 75; p.10.]

His keys were stolen from his backpack during a class break. [ECF No.75;p.12.]

He had to leave school because Johnson failed to take corrective action to prevent Gallagan and Mc Evoy pervasive insidious discriminatory conduct. [ECF No. 75; p.22.]

- But the first instance is not enough because Arrington did not allege that the other students were classmates, and it's entirely possible that there were multiple classes with different instructors, who used different books, for the same basic course. Without additional information, it is far too speculative to infer that Arrington was given a different, worse coursebook because of his race. As for the Pell Grant refund checks, Arrington's own allegations reflect that the timing of the checks depended on individualized factors such as the number of class hours completed, and we do not have sufficient information about Arrington or the other students for it to be plausible to conclude that the delay Arrington experience was due to his race rather some other factor. Op.8.

**First, the panel overlooked or made a misapprehension of facts that *Arrington* did not allege that the other students were classmates**.

The third amended complaint alleges Plaintiff noticed other non-African American students who had just recently completed the (Alternating Current

Circuit) class around the same time he completed the (Alternating Current Circuit) class with a different book than what he had. [ECF No. 75; p.14.] A class is a specific instance of a course such as a particular meeting time with a specific instructor. Students who complete the same class during the same time period can absolutely be inferred as classmates.

**Second, the panel overlooked material facts alleged in the third amended complaint that *Arrington's* Pell Grant refund checks were delayed due to his race.**

The third amended complaint alleges:

66. One of the most egregious, act by Defendant Mc Evoy was on or about February 3rd ,2012 when Defendant Mc Evoy, called Plaintiff and left a message on the answer machine stating "I checked your hours there was huge different from the 280.25 that I told you. I checked your hours again you have 415.25 which is huge different."

68. Defendant Mc Evoy, told Plaintiff on several occasion when Plaintiff inquired about his financial aid refund that she couldn't disburse the funds until Plaintiff had 240-260 class hours and Plaintiff had to keep up with his own

class.

70. Plaintiff discovered after contacting several Miami-Dade County Public Technical Schools financial aid officers and was informed that, financial aid refunds are disbursed after, about 150 class hours which is approximately (1) month and (2) week attending class full-time.

72. Defendant Mc Evoy repeated to provided service, aid, benefit in a manner different than other similarly situated non-African American students. Subsequently, on or about April 5th, 2012, approximately (3) three months after Plaintiff registered for (Year-Term 2011-2) Plaintiff asked Defendant Mc Evoy, about his financial aid award. "Defendant Mc Evoy stated to Plaintiff I can't tell you when you would be receiving your (Pell Award) refund right now."

74. Plaintiff had seen other non-African American students with their, Pell Award refunds. Also, Defendant Mc Evoy had placed a list on the board in alphabetical order telling students pick-up their refunds.

- Apart from these two instances, there is nothing in the complaint to indicate that the mistreatment Arrington experienced was due to his race or that there was a "racially hostile" environment at GTB. Accordingly, Arrington failed to state a plausible claim of race discrimination under either the Equal Protection Clause or Title VI. Op. 9.

**The panel overlooked other material facts alleged in the third amended complaint that shows the mistreatment *Arrington* experienced was due to his race and there was a "racially hostile" environment at GTB.**

**Race Mistreatment**

GTB's avionic instructor shared his academic record with non-educators. [ECF No. 75, pp. 9, 20.]

GTB's avionic instructor wouldn't allow him to sign the (sign in sheet). [ECF No. 75, p.12.]

GTB's financial aid officer withheld information regarding VRAP benefit for veterans. [ECF No. 75, p.10.]

GTB's financial aid officer told him he had to keep track of his own class hours. [ECF No. 75; p.16.]

GTB's principal told him "we aren't going to stop registration just to issue your Pell award." [ECF No. 75; p.18.]

GTB's agents failed to forward transcript in accordance to School Board's policy. [ECF No. 75; p.23.]

**Racially Hostile Environment At GTB**

his keys were stolen from his backpack during a class break. [ECF

No.75; p.12.]

Other students " deliberately distracted" him whenever he was trying to take a test and "shadowed" him when he went to the bathroom, and the principal refused to take action. [ECF No.75; p.20.]

- Nor has Arrington established a basis for supervisory or municipal liability under § 1983. Arrington did not allege that he was mistreated because of an official policy of the School District or GTB, and his allegations do not show the existence of a widespread "custom" of mistreatment similar to that which he experienced. Op. 9.

**The panel overlooked material facts alleged in the third amended complaint that established supervisor liability under 42 U.S.C.1983.**

**Alberto Carvalho**, a superintendent with the Miami-Dade County Public School District inferred acting under color of state law is liable for supervisor liability under 42 USC 1983. *Arrington* contacted the School District on or about April 5, 2012 and May 16, 2012, about how **Claudia Mc Evoy** GTB's financial aid officer provided him with a different service, aid or benefit or provide service in manner different than other non- African American students. [ECF No. 75; pp.7,17-18.] and **Johnson** was notified. **Alberto Carvalho's** subordinates **Pamela Johnson, Sean Gallagan** and **Claudia McEvoy** deprived *Arrington*, of his rights

under the Equal Protection Clause of 14th Amendment of the United States Constitution. **Carvalho,** either knew about it or should have known about it that the subordinates were engaging in the acts and failed to act to prevent the subordinates from engaging in such conduct. *C***arvalho's** conduct was so closely related to deprivation of *Arrington's* rights as to be the moving force that caused the ultimate injury. [ECF No. 75; pp. 4-5,23-24,28-29.]

**Pamela Johnson,** an area supervisor with Miami-Dade County Public School District and George T. Baker Aviation Technical College inferred acted under color of state law. **Johnson's** subordinates **Sean Gallagan** and **Claudia Mc Evoy**, deprived *Arrington's* of rights under Equal Protection Clause of the 14th Amendment of the United States Constitution. **Johnson,** failed to act to correct or prevent the subordinates from engaging in such conduct that deprived *Arrington* of his rights **Johnson's** conduct was so related to the deprivation of *Arrington's* rights as to be the moving force that caused the ultimate injury. [ECF No. 75; pp.6-7,19-22,25-26,29-30.]

**Sean Gallagan**, a school principal with George T. Baker Aviation Technical College inferred acted under color of state law. **Gallagan's** subordinates **Ida**

**Sigillo, Claudia McEvoy** and **Alberto Flores** deprived Arrington, of his rights under the Equal Protection Clause of the 14th Amendment of the United States Constitution. **Gallagan**, knew that the subordinates were engaging in the acts, and knew conduct would deprive *Arrington,* of his rights and failed to stop it. **Gallagan's** conduct was so closely related to the deprivation of *Arrington's* rights as to be the moving force that caused the ultimate injury. [ECF No. 75; pp. 5-6,14-23.]

**The panel overlooked material facts alleged in the third amended complaint that established municipal liability against Miami-Dade County Public School District under 42 U.S.C. 1983.**

**Alberto Carvalho**, a superintendent with Miami-Dade County Public School District, inferred acted under color of state law; the inaction of **Carvalho**, deprived *Arrington* of his rights under the Equal Protection Clause of the 14th Amendment of the United States Constitution. *Arrington* contacted the School District on or about April 5, and May 16, 2012, about **Mc Evoy's** discriminatory conduct. [ECF 75, pp.7,17-18].

As a direct and proximate **Carvalho**, acted pursuant to an expressly adopted official policy of Miami-Dade County Public School District; and Miami-Dade

County Public School District's official policy caused the deprivation of *Arrington's* rights by **Carvalho**, that is Miami-Dade County Public School District's official policy is so closely related to the deprivation of *Arrington's* rights as to the moving force that caused the ultimate injury. [ECF No. 75;4-5, 23-24,28-29.]

**Pamela Johnson**, an area supervisor with Miami-Dade County Public School District and George T. Baker Aviation Technical College inferred acted under color of state law; the failure to act of **Johnson** deprived *Arrington,* of his rights under the Equal Protection Clause of 14th Amendment of the United States Constitution. **Johnson** acted pursuant to an expressly adopted official policy of the Miami-Dade County Public School District's official policy caused the deprivation of *Arrington's* rights by **Johnson***;* this is Miami-Dade County Public School District's official policy is so closely related to the deprivation of *Arrington's* rights as to be the moving force that caused the ultimate injury. [ECF No. 75; pp. 6-7,19-22,25-26,29-30.]

**Sean Gallagan**, a school principal with George T. Baker Aviation Technical

College inferred acted under color of state law; the acts of **Gallagan**, deprived *Arrington* of his rights under Equal Protection Clause of the 14th Amendment of the United States Constitution. **Gallagan***,* acted pursuant to an expressly adopted official policy of the Miami-Dade County Public School District; and Miami-Dade County Public School District's official policy caused the deprivation *Arrington's* rights by **Gallagan** that is the Miami-Dade County Public School District's official policy is so closely related to the deprivation Arrington's rights as to be the moving force that caused the ultimate injury. [ECF No. 75; pp. 5-6,14-23.]

**The panel overlooked material facts alleged in the third amended complaint that established municipal liability against George T. Baker Aviation Technical College under 42 U.S.C. 1983.**

**Sean Gallagan***,* a school principal with George T. Baker Aviation Technical College inferred acted under color of state law; the acts of **Gallagan***,* deprived *Arrington* of his rights under the Equal Protection Clause of the 14th Amendment of the United States Constitution. **Gallagan***,* acted pursuant to an expressly adopted official policy of George T. Baker Aviation Technical College; and George T. Baker Aviation Technical College's official policy caused the deprivation of *Arrington's* rights by **Gallagan** that is George T. Baker Aviation

Technical College's official policy is so closely related to the deprivation of *Arrington's* rights as to be the moving force that caused the ultimate injury. [ECF No. 75; pp.5-6,14-23.]

## CONCLUSION

*Michael D. Arrington*, acting pro se respectfully requests that the panel grant rehearing.

Respectfully submitted this 3rd, day of July 2026.

/s/ Michael D. Arrington
Pro se Michael D. Arrington
204 Pride Way
Bedford, Massachusetts 01730
michaelarrington31@yahoo.com
(781) 652-1479

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of document exempted by Fed. R. App. P. 32(f), this document uses a monospaced typeface and contains 3,897 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportional-spaced typeface using Microsoft Word 365 in Times New Roman font in 14-point type.

Dated: July 3rd, 2026

/s/ Michael D. Arrington
Michael D. Arrington
204 Pride Way
Bedford, Massachusetts 01730
(781) 652-1479
michaelarrington31@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 3rd, 2026, this petition was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

/s/ Michael D. Arrington
Pro se Michael D. Arrington
204 Pride Way
Bedford, Massachusetts 01730
michaelarrington31@yahoo.com
(781) 652-1479